HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DMITRY KOLOSNITSYN

    Plaintiff,

v.

CRYSTAL MOUNTAIN, INC., a Washington corporation,

    Defendant.

Case No. C08-05035-RBL

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DISMISSAL

THIS MATTER is before the Court on Defendant's Motion For Summary Judgment [Dkt. #32]. While skiing at the Defendant's resort, Plaintiff Kolosnitsyn fell off a trail into a creek, sustaining injuries. Mr. Kolosnitsyn sued, asserting Crystal Mountain was negligent for failing to provide reasonably safe facilities, and failing to address a dangerous condition.

Crystal Mountain denies it was negligent, but its Summary Judgment Motion is based primarily on what it claims is a liability release signed by Kolosnitsyn when he rented his ski equipment. Alternatively, Crystal asks the Court to dismiss the case because the facts surrounding Plaintiff's accident do not establish that Crystal Mountain was grossly negligent. For the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Kolosnitsyn is a native of Latvia. On November 21, 2006, while in the United States on business, he went skiing at the Crystal Mountain Ski Area. Plaintiff was injured when he slid or fell off a groomed ski run and into a creek. The accident occurred near the junction of the trails "Tinkerbell" and "Quicksilver," where a natural creek had been channeled into an underground culvert, to protect the creek and to keep the water from flowing across the ski run. The day of the accident, bamboo poles marked the border of the run where the creek ran. Plaintiff understood that the bamboo poles demarcate "some danger there and you need to stay away." [Deposition of Dmitri Kolosnitsyn, Dkt. #33; Ex. 1 at 27:2-13].

The facts surrounding the accident are disputed. Mr. Kolosnitsyn does not recall the specific details of the accident. Plaintiff's skiing companion, Alexsey Mitin, claims that he and the Plaintiff were stopped in a relatively flat area near the edge of the trail when the snow beneath the rear half of the Plaintiff's skis collapsed under his weight. Plaintiff slid backwards past the bamboo poles demarcating the edge of the trail into a culvert and landed in the creek, sustaining injuries.

The Crystal Mountain ski patrol responded to the accident. Based on the trajectory of the tracts in the soft snow and the distance that the Plaintiff landed from the edge of the culvert, Crystal Mountain's investigation concluded that Mr. Kolosnitsyn skiied into the culvert with some momentum. Crystal Mountain found no evidence of collapsed snow.

Prior to the ski accident, Mr. Kolosnitsyn rented his ski equipment from the rental shop at the base of the mountain, which is owned and operated by the resort itself. Because Mr. Kolosnitsyn's English language skills are limited, his friend and guide for the day, Mr. Alexsey Mitin, assisted him with his rentals. Mr. Mitin acted as Mr. Kolosnitsyn's translator throughout the rental process. The rental shop employee marked an X on the rental form and liability waiver, and asked Mr. Kolosnitsyn to sign the form. After Alexis translated the employee's direction to "sign here," Mr. Kolosnitsyn signed the form without further questions.

The exculpatory clause at issue here was printed on a form entitled "BOYNE USE SKI AND SNOWBOARD RENTAL FORM." Below, in smaller text, the form states other locations of ski shops: "BOYNE MOUNTAIN, MI • BOYNE HIGHLANDS, MI • BIG SKY, MT • BRIGHTON, UT • CRYSTAL MOUNTAIN, WA." [Dkt. #32, Ex. 6]. The form has multiple uses. It acts as a receipt for payment. The left two-thirds of the form assists ski technicians in fitting equipment to the renter. There is an area for patrons to "print" their personal information, including their weight, height, age, sex, and ski ability. There is also an area for technicians to mark what equipment has been rented out, and if and when a deposit has been paid and returned. It is not objectively clear from the form that Crystal Mountain owns the rental shop.

The "Equipment Rental & Liability Release Agreement" occupies the right third of the form. Printed are seven paragraphs in fine print, some which include phrases that are bolded, underlined, or in capital letters. The fourth paragraph listed states in bold font:

> **"I AGREE TO RELEASE, whether in the present or in the future, to the fullest extent allowed by law, the ski/snowboarding shop, its employees, owners, affiliates, agents, officers, directors, and the manufacturers and distributors of this equipment (collectively "PROVIDERS"), from all liability for injury, death, property loss and damage which results from the equipment user's participation in the sport of skiing/snowboarding/SnowBlade use, or is in any way related to the use of this equipment, including all liability which resulted from the NEGLIGENCE or BREACH OF CONTRACT of PROVIDERS, or any other person or cause."**

Crystal Mountain seeks to enforce this liability agreement, or in the alternative, dismiss the case because Mr. Kolosnitsyn's theories of negligence are insufficient.

## **DISCUSSION**

Defendant's motion presents two issues: 1) whether Mr. Kolosnitsyn expressly assumed the risk involved in skiing when he signed the Equipment Rental & Liability Release Agreement on the Ski and Snowboard Rental form; and 2) the nature of the duty the ski resort owed Mr. Kolosnitysyn, and, based on the facts, whether Mr. Kolosnitsyn has alleged and supported a viable negligence theory.

## I. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## II. The Equipment Rental & Liability Release Agreement on the Rental Form is Not Clear.

Express assumption of risk is based on contract and involves an agreement by one party to relieve another party of the duty to use reasonable care. *Scott v. Pacific West Mountain Resort*, 119 Wash.2d 484, 496 (1992); *Vodopest v. MacGregor*, 128 Wash.2d 840, 848 (1996). It bars a claim resulting from risks actually assumed by the plaintiff. *Scott,* 119 Wash.2d at 496; *Johnson v. NEW, Inc.*, 89 Wash.App. 309, 311 (1997). The release is to be strictly construed. *Johnson*, 89 Wash.App. at 312.

Exculpatory clauses are enforceable unless they violate public policy, are inconspicuous, or the negligence falls below standards established by law. *Scott*, 119 Wash.2d at 492; *Vodopest*, 128 Wash.2d at 848. While there are instances where public policy reasons for preserving an obligation of care owed by one person to another outweigh our traditional regard for the freedom to contract, liability releases for high-risk sports have been generally held to be enforceable. *Wagenblast v. Odessa School Dist. No. 105-157-166J,* 110 Wash.2d 845, 849 (1988); *see also Vodopest,* 128 Wash.2d at 848-49 ("Appellate

decisions in Washington have consistently upheld exculpatory agreements in the setting of adults engaging in high-risk sporting activities.")

Here, the only issue is whether the release is inconspicuous. Crystal argues that "conspicuous" means clearly displayed. Plaintiff argues that "conspicuous" means the release must clearly disclose the risks to be assumed, and no reader would understand that he was releasing the ski resort for the defective design, construction, and maintenance of the ski area when he signed the equipment liability and release waiver. In practice, courts have followed both interpretations. "Conspicuous" means that the liability release language 1) is clearly displayed, and 2) that its meaning is clear and unambiguous. The test is whether the releasing language is "so inconspicuous that reasonable persons could reach different conclusions as to whether the document was unwittingly signed." *Baker v. Seattle*, 79 Wash.2d 198, 200 (1971). *See also Conradt v. Four Star Promotions, Inc.*, 45 Wash.App. 847 (1986); *Blide v. Rainier Mountaineering*, Inc., 30 Wash.App. 571 (1981), *review denied*, 96 Wash.2d 1027 (1982); *Hewitt v. Miller*, 11 Wash.App. 72 (1974).

"Factors in deciding whether a waiver and release provision is *conspicuously displayed* include: whether the waiver is set apart or hidden within other provisions, whether the heading is clear, whether the waiver is set off in capital letters or in bold type, whether there is a signature line below the waiver provision, what the language says above the signature line, and whether it is clear that the signature is related to the waiver." *Johnson v. UBAR, LLC,* 210 P.3d 1021, 1023 (Wash. Ct. App. 2009)(internal citations omitted)(emphasis added). Here, the waiver occupies one-third of the rental form, and the relevant text is bolded. The language is conspicuously displayed. An objectively reasonable person would not unwittingly signed the liability release agreement because he did not see it.

However, the language is unclear as to whether it releases Crystal Mountain from liability for negligence with regard to services offered by the shop (*i.e.* equipment rental, lessons, etc.). There is an issue of material fact as to whether the term "PROVIDERS," or "owners" as used in the liability release

agreement would be objectively and conspicuously interpreted to include the ski resort itself. While the ski shop where Mr. Kolosnitsyn rented his shop is owned by Crystal Mountain, there are ski resorts that contract out services to private companies. *See e.g., Scott,* 119 Wash.2d at 488 (ski school operated by private third party). It is not clear whether the language released liability for injuries related solely to the equipment rental or ski lessons purchased, or whether it relates to the use of the ski area itself. Because it is unclear that the form released Crystal Mountain ski area, the Court will not enforce an agreement where a person could have unwittingly signed away his right to recover for negligence in this context.

Moreover, Crystal Mountain does not require all parties who ski at the resort to sign a release, and Crystal Mountain has not alleged that similar release language is present on, for example, lift tickets. Only those who rent from its rental shop are required to sign the equipment and liability release. It would be fundamentally unfair and nonsensical to hold Crystal Mountain to a higher duty of care for skiers who bring their own equipment than for those who rent equipment from the mountain shop. Therefore, Defendant's Motion for Summary Judgment to enforce the equipment liability release as express assumption of the risk is DENIED.

### III. QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT ON THE PLIANTIFF'S NEGLIGENCE CLAIM.

Crystal Mountain also seeks summary dismissal of Plaintiff's claims, arguing that the risk that Plaintiff encountered was an inherent and normal part of skiing, and that it is "undisputed" that Plaintiff skied past the bamboo poles. The second part of that argument is not factually correct; Plaintiff's factual allegation is that the snow under his skis collapsed inside the poles and caused him to fall past them into the creek.

Furthermore, Plaintiff's expert, Dick Pennimen, contends that a 15-foot drop-off is an unacceptable hazard if it is near a groomed trail. Citing the *Safety Hierachy, Barnett and Brickman, Journal of Safety Research 1986*, Plaintiff's expert suggests that the duty owed to Plaintiff,was to install "one or more catch fences immediately above the dropoff" and "proximal to the drop-offs as to extend the

full width of the hazard area." [Preliminary Statement of Opinions of Dick Penniman, Dkt.35-2; Ex. 5].

It is beyond debate that skiing is an inherently risky sport that has the potential to cause injuries in a variety of ways. "[T]hose who participate in sports or amusement subjectively assume known risks of being hurt." *Codd v. Stevens Pass, Inc.*, 45 Wash.App. 393, 401 (1986). Under Washington law, "a defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport." *Scott*, 119 Wn.2d at 498. A ski area only has a duty to not engage in "negligent acts which unduly enhance the inherent risks of the sport." *Id.* at 501. The factual question is whether the accident was a result of the inherent risks of the sport, or Crystal's negligence in permitting the dangerous condition to exist, or in failing to remedy it. The record before the Court does not permit a resolution of this question on Summary Judgment.

Viewed in the light most favorable to the Plaintiff, the facts support a theory of negligence upon which he may recover. Defendant's Motion for Summary Judgment [Dkt. #32] on the negligence claim is therefore DENIED.

IT IS SO ORDERED this 28th day of August, 2009.

                                      /s/ Ronald B. Leighton
                                      RONALD B. LEIGHTON
                                      UNITED STATES DISTRICT JUDGE